Kenneth A. ASTOR

v.

The BOULOS COMPANY, INC., et al.

Supreme Judicial Court of Maine.

Argued Sept. 20, 1982.

Decided Oct. 29, 1982.

Robert G. Frazier (orally), Ralph A. Dyer, Portland, for plaintiff.

Pierce, Atwood, Scribner, Allen, Smith & Lancaster, George J. Marcus (orally), Meri N. Lowry (orally), Portland, for defendants.

Before GODFREY, NICHOLS, ROBERTS, CARTER, VIOLETTE and WATHEN, JJ.

NICHOLS, Justice.

A written agreement for a finder's fee on the lease of two racquetball clubs in Falmouth and South Portland is the source of the dispute which leads to the present appeal.

In March, 1980, the Plaintiff, Kenneth A. Astor, brought an action in Superior Court, Cumberland County, alleging that he was due a refund of certain amounts he had paid as a finder's fee to the Defendants, The Boulos Company, Inc., and Joseph F. Boulos,[1] hereinafter collectively referred to as Boulos. The Defendants counterclaimed for that portion of the total finder's fee not paid by the Plaintiff. After a jury-waived trial in January, 1982, the Superior Court entered judgment for Boulos on Astor's claim and awarded Boulos $16,500 on the counterclaim.[2]

Astor took a timely appeal, asserting that the Superior Court erred, first, in not excluding certain parol evidence relating to the written agreement; second, in concluding that all breaches had been cured; and third, in excluding evidence of Astor's legal expenses. Boulos cross-appealed, asserting that he was entitled to the full amount of his finder's fee, $33,000.

With respect to the issues raised on appeal we affirm the judgment of the Superior Court. With respect to the issue raised on cross-appeal we vacate and remand for further fact-finding.

This controversy arises out of a leasing arrangement. Hoping to sell his two racquetball clubs, Astor, in December, 1978, secured the services of Joseph Boulos Associates, a Portland brokerage firm. No purchaser was found, but Boulos did locate two lessees, John P. Flynn, Jr., and Robert C. Thompson. Boulos also found a guarantor for the leases, L.M.V. Leisure Time, Inc.

In April, 1979, Astor leased the clubs to Flynn and Thompson, for a ten-year period with L.M.V. Leisure Time, Inc., as a guarantor. In that same month Astor and Boulos entered into a finder's fee agreement, under which Boulos was to receive a fee of $33,000 for his services with respect to procuring the leases. That fee was to be paid in five yearly installments.

That agreement further provided for refund of a proportionate amount of the find-

---

[1]. The Defendants, The Boulos Company and Joseph F. Boulos, are successors to Joseph Boulos Associates. For purposes of their cross-appeal we will treat the Defendants as a single appellant pursuant to M.R.Civ.P. 73(d).

[2]. This $16,500 included $6,600 already paid by Astor to Boulos plus an additional $9,900.

er's fee "[s]hould termination or breach of said lease occur for any reason whatsoever." The agreement included an example of the mechanics of a refund; in essence, the finder's fee would continue to be paid as long as the leases continued without breach or termination. Nowhere in this agreement was there mention either of the guarantor or of the legal effect on Astor's right to a refund in the event that any breach should be cured by the guarantor.

In the months which ensued each of the leases was breached. In August, 1979, with Astor's consent, Flynn and Thompson assigned their leases to Maine Racquetball, Inc. In April, 1980, Maine Racquetball, Inc. petitioned for bankruptcy; that bankruptcy petition constituted a breach of the lease agreements.

Next, Maine Racquetball, Inc. assigned the leases in August, 1980, again with Astor's consent, to the original guarantor, which agreed to cure the defaults of the previous tenants. In October, 1981, pursuant to a monetary settlement, the original guarantor (and the current tenant) and Astor agreed to terminate the leases. Thus Astor regained possession of the clubs. The present action followed.

We turn first to Astor's contentions regarding the parol evidence rule, a rule "familiar to many but fathomed by few."[3] Astor argues that the Superior Court erred in considering evidence extrinsic to the written finder's fee agreement, which evidence contradicted, varied or altered the terms of that agreement.

■ The parol evidence rule operates to exclude from judicial consideration extrinsic evidence offered to alter or vary unambiguous contractual language.[4] This proposition, however, presupposes the existence of an integrated contract. Once the existence of such a contract is ascertained, the degree of integration will control the scope of exclusion under the parol evidence rule.[5] The Second Restatement of Contracts summarizes:

(1) A binding integrated agreement discharges prior agreements to the extent that it is inconsistent with them.

(2) A binding completely integrated agreement discharges prior agreements to the extent that they are within its scope.[6]

In determining whether an agreement is completely or just partially integrated, reference is properly made to agreements and negotiations preceding that writing.[7]

■ Viewing the finder's fee agreement from this perspective, it is abundantly clear, that this writing, like the writing involved in *Interstate Industrial Uniform Rental v. F.R. Lepage Bakery, supra,* "did not integrate completely all the understandings of the parties." *Id.* at 519. The Superior Court made a specific finding that Astor would not have entered into either the leases or the finder's fee agreement without L.M.V.'s guarantee; the court also found that Boulos understood that it would earn its fee as long as L.M.V. performed under the guarantee. In stark contrast to these unchallenged findings, the finder's fee agreement is silent as to either the presence of the guarantor or the legal effect of a cure by the guarantor of a tenant's breach.

In light of this marked omission, we conclude that this contract is, at most, partially

---

**3.** J. Murray, *Grismore on Contracts* § 94 (1965).

**4.** *Tinker v. Continental Insurance Co.,* Me., 410 A.2d 550, 554 (1980); *Norton v. Benjamin,* Me., 220 A.2d 248, 251 (1966).

In this regard, the admonition that the parol evidence rule is a rule not of evidence but of substantive law should be emphasized. *Interstate Industrial Uniform Rental Service v. F.R. Lepage Bakery,* Me., 413 A.2d 516, 519 (1980); *see also Financial Realty Trust v. W & Z Prop-*

erties, Ltd., Me., 425 A.2d 1340, 1343 n. 1 (1981).

**5.** *See Interstate Industrial Uniform Rental Service v. F.R. Lepage Bakery,* 413 A.2d at 519.

**6.** *Restatement (Second) of Contracts* § 213(1)–(2) (1981).

**7.** *Interstate Industrial Uniform Rental Service v. F.R. Lepage Bakery,* 413 A.2d at 519; *Restatement (Second) of Contracts* § 214 (1981).

integrated.[8] As such, the Superior Court properly considered extrinsic evidence regarding the intended effect to be given any cure by the guarantor of prior breaches. Such evidence served to illuminate, rather than to contradict, the express intentions of the parties.

 Next, Astor contends also that the Superior Court erred in finding that the guarantor actually cured all prior breaches of the lease agreements. Astor relies on the "perfect tender" rule, a doctrine requiring exact compliance with every single contractual term to avoid a breach.

While we held in *Moulton Cavity & Mold v. Lyn-Flex Industries,* Me., 396 A.2d 1024, 1027 (1979) that this generally disfavored rule survives the enactment of the Uniform Commercial Code as respects a contract for the sale of goods, the "perfect tender" rule does not control in the area of service contracts, which are governed by the standard of substantial performance.[9] Moreover, to apply the "perfect tender" rule in the situation where a guarantor is contractually obligated to make good on breaches by the principal would effectively write the guarantor out of the picture.

Applying, then, the substantial performance standard, we find ample evidence in the record supporting the Superior Court's finding that all breaches were cured by the guarantor.[10]

 Last, Astor asserts that the Superior Court erred in excluding evidence of legal expenses he incurred as a result of the breaches by the tenants. At trial Astor specifically stated that such evidence would be presented not as an item of damage but as an indication of the materiality of the breaches. In light of our conclusion that the Superior Court correctly found that all breaches were cured, we cannot say that the Superior Court abused its discretion in excluding evidence regarding the materiality of those breaches.[11]

By way of cross-appeal Boulos asserts that the Superior Court erred in finding that Boulos was entitled to only one-half of the $33,000 finder's fee. Specifically, Boulos contends that because the leases were voluntarily terminated by Astor, the full fee was earned.

 Although the Superior Court's award to Boulos of one-half of the total finder's fee has a certain Solomonesque simplicity the judgment of the court does not adequately consider the legal effect of a voluntary termination by the landlord on a finder's right to his fee.[12] In particular we note the absence of findings regarding the reasons for the termination and the voluntariness, *vel non,* of that termination. Moreover, the portion of the fee awarded to Boulos is not consistent with the portion of the term for which Astor was paid rent.

Further finding by the Superior Court is needed of the facts relative to termination, as well as consideration by that court of the impact of such termination on the parties' agreement.

Therefore, the entry is:

Appeal denied.

Cross-appeal sustained.

Judgment on the Plaintiff's claims affirmed.

Judgment on the Defendant's counterclaim vacated and remanded for further proceedings consistent with the opinion herein.

All concurring.

---

8. We do not find determinative of the question of integration language in the finder's fee agreement which purports to operate as a mutual release by both parties of further claims for compensation.

9. *Rockland Poultry Co. v. Anderson,* 148 Me. 211, 216, 91 A.2d 478, 480 (1952).

10. *See Bazinet v. Howe,* Me., 427 A.2d 494, 496 (1981).

11. *See Torrey v. Congress Square Hotel Co.,* 145 Me. 234, 240, 75 A.2d 451, 456 (1950).

12. *See, e.g., Ross v. Perry,* 281 N.C. 570, 189 S.E.2d 226, 228 (1972).