**Frances L. WAXLER**

v.

**Alfred J. WAXLER.**

Supreme Judicial Court of Maine.

Argued March 8, 1983.

Decided April 14, 1983.

---

Reef & Mooers, P.A., William B. Jordan (orally), Norman S. Reef, Portland, for plaintiff.

Murray, Plumb & Murray, E. Stephen Murray (orally), Ellyn C. Ballou, Portland, for defendant.

Before McKUSICK, C.J., GODFREY, NICHOLS, CARTER and WATHEN, JJ., and DUFRESNE, A.R.J.

DUFRESNE, Active Retired Justice.

The defendant, Alfred J. Waxler, appealed to the Superior Court (Cumberland County) from a judgment of the District Court (Portland) against him in favor of his former wife, Frances, in the amount of $133,407.00 found to be due under the parties' 1975 divorce decree. The judgment was rendered in the wife's motion for arrearage brought by Frances Waxler in October of 1981. The Superior Court affirmed the judgment, agreeing with the District Court decision that neither the amount of the weekly payments made under the Property Settlement Agreement incorporated into the divorce decree, nor the rental value of an apartment and automobile furnished to the plaintiff wife thereunder, was to be credited against the sum of one hundred sixteen thousand one hundred ninety ($116,-190.00) dollars in lieu of alimony which the husband agreed to pay his wife in or within the period of five years. Mr. Waxler now appeals to this Court. He asserts error in the interpretation of the Property Settle-

ment Agreement, and especially in the failure of the trial court to consider extrinsic evidence in determining the meaning of the Agreement. We affirm the order of the Superior Court.

On March 17, 1975, Alfred and Frances Waxler entered into a separation agreement setting down in writing their covenants, agreements, mutual promises and undertakings respecting their future relationship and the property settlement agreement to which both agreed. This agreement paved the way for the judicial dissolution of their marriage of twenty-five years' duration and the property settlement was incorporated in and made a part of the divorce decree obtained in the District Court (Portland) on March 20, 1975.

This original agreement reads in pertinent part as follows:

FIFTH: The provisions of this agreement shall not be construed to prevent either party from going forward and obtaining an absolute divorce in an action which is now pending in the District Court of Maine, District Nine, Division of Southern Cumberland; and any decree so obtained by either party shall not in any way affect this agreement or any of the terms, covenants or conditions thereof, this agreement being absolute and irrevocable, both parties intending to be bound thereby;

SEVENTH: The HUSBAND agrees to pay the WIFE in lieu of alimony the sum of One Hundred Sixteen Thousand One Hundred Ninety ($116,190.00) Dollars in or within the period of five years from date. HUSBAND is to execute a non interest bearing note for said amount;

EIGHTH: HUSBAND agrees to convey the land and buildings located at 104–108 Woodford Street and 5 Bancroft Court in the City of Portland to the WIFE;

NINTH: HUSBAND will manage, control, and be entitled to the receipts of rentals on said properties until said promissory note is due. HUSBAND will be responsible for all expenses including but not limited to interest, mortgage, and real estate tax payments for said properties;

TENTH: If either property is sold prior to the due date of said note, then the proceeds will be used to reduce the mortgages on both properties and if there is a surplus, it will be used to reduce said note;

ELEVENTH: Until said One Hundred Sixteen Thousand One Hundred Ninety ($116,190.00) Dollars is paid to the WIFE, the HUSBAND agrees to pay the sum of Twenty-nine ($29.00) Dollars per week to the WIFE;

TWELFTH: On or before July 1, 1975, the WIFE agrees to move from 5 Bancroft Court to 104–108 Woodford Street where the HUSBAND will provide a rent free apartment until said note to the WIFE is paid in full;

THIRTEENTH: The HUSBAND agrees to supply and maintain an automobile for the WIFE until said sum of One Hundred Sixteen Thousand One Hundred Ninety ($116,190.00) Dollars is paid, and so long as HUSBAND remains in the automobile business;

FOURTEENTH: The WIFE agrees to convey to the HUSBAND all other interest she may have in real estate and in existing corporations;

.     .     .     .     .

EIGHTEENTH: Each party hereby certifies that he has read and knows the meaning and binding effect of the foregoing agreement, and that the same constitutes the entire agreement between the parties, and that no other representations, agreements, promises, or inducements have been made by either party not herein included.

The promissory note contemplated by the SEVENTH clause of the agreement was executed by Mr. Waxler on March 19, 1975, and provided in relevant part as follows:

Five (5) years after date I promise to pay to the order of Frances L. Waxler the sum of one hundred sixteen thousand one hundred ninety dollars ($116,190.00) without interest, provided, that if default be made in payment of said amount at the time aforesaid, then the undersigned shall pay to the holder, in addition to the principal, interest on any unpaid principal from the date of default at the rate of ten percent (10%) per annum or an annual interest rate equal to two percent (2%) above the average prime short-term lending rate Portland, Maine banks are then charging commercial borrowers, whichever is greater.

In the event of default, the undersigned promises to pay in addition to principal and interest, all costs of collection including reasonable attorney's fees.

In late April of 1975, barely one month after the divorce decree had been signed, the defendant-husband proposed and negotiated an amendment of the original settlement agreement. This amendment, the terms of which are not in dispute between the parties, was filed of record with the court. Received as evidence at the hearing, it modifies the EIGHTH, ELEVENTH, TWELFTH and THIRTEENTH paragraphs of the original settlement agreement as follows:

1. The intention of paragraph numbered EIGHTH is for the Husband to convey the land and buildings located at 104–108 Woodford Street and 5 Bancroft Court in the City of Portland to the Wife, and the Wife shall hold legal title to both parcels of property until the Husband pays the sum of One Hundred Sixteen Thousand One Hundred Ninety ($116,-190.00) Dollars to the Wife. After full payment, the Wife is to reconvey those parcels to the Husband.

2. The intention of paragraph numbered ELEVENTH is that the Husband shall pay to the Wife the sum of Twenty-nine ($29.00) Dollars per week until the entire sum of One Hundred Sixteen Thousand One Hundred Ninety ($116,-190.00) Dollars is paid in full. These payments shall cease upon payment of said sum or at the death of the Wife, whichever occurs first.

3. The intention of paragraph numbered TWELFTH is that the Wife shall be provided a rent free apartment until the note for One Hundred Sixteen Thousand One Hundred Ninety ($116,190.00) Dollars is paid in full or until her death, whichever occurs first.

4. The intention of paragraph numbered THIRTEENTH is that the Husband provide and maintain an automobile for the Wife until said sum of One Hundred Sixteen Thousand One Hundred Ninety ($116,190.00) Dollars is paid and so long as the Husband remains in the automobile business or until her death, whichever occurs first.

Both the original settlement agreement and this first amendment were drafted by the plaintiff-wife's attorney; the defendant-husband had been negotiating for himself, concededly by choice and with full understanding of the situation. Later, in May of 1975, the attorney sought to have Mr. Waxler execute a supplemental amendment which would have dispelled the present controversy, but the defendant, being represented by counsel at that time, refused to sign it.

In August of 1981, Mr. Waxler filed in the District Court (Portland), where the divorce had been obtained, a motion to clarify, alter, amend or suspend that portion of its divorce judgment which relates to the defendant-husband's specific obligations in lieu of alimony, claiming entitlement to an aggregate credit of forty thousand five hundred ($40,500.00) dollars for the total amount of the weekly payments of twenty-nine ($29.00) dollars, plus the rental value of the rent-free apartment and the maintenance-and-repair-free automobile furnished by him to his divorced wife under the

agreement. He also sought reformation of that portion of the divorce decree which relates to the payment of interest on default on the promissory note to provide an interest rate no greater than twelve percent (12%) per annum. He bases his right to such relief on an alleged mutual mistake of fact of the parties in the execution of the agreement and in changed economic circumstances so far as the stated interest rate in the note is concerned.

In October of 1981, the plaintiff-wife countered with a motion for arrearage, praying for judgment in the full amount of the note, plus accrued interest, plus per diem interest from October 22, 1981, plus costs of collection, plus reasonable attorney's fees.

Both motions were consolidated for hearing, which took place in December, 1981 and on December 24, the District Court denied the motion of the defendant-husband, but granted that of the plaintiff-wife, finding the amount of arrearage to be in the sum of one hundred thirty-three thousand four hundred and seven ($133,407.00) dollars, including interest for the period—3/18/80—12/24/81—at the rate of 10% percent per annum. In his decision, the District Court judge made the following pertinent specific findings of fact and conclusions of law:

(1) there exists no mutual mistake of fact, sufficient change of circumstances, or other legal cause necessitating an alteration or amendment of the original divorce decree;

(2) the language of the divorce decree with the incorporated settlement agreement and amendment thereto is clear;

(3) the defendant remains in the automobile business within the meaning of paragraph THIRTEENTH of the incorporated agreement;

(4) the interest rate provisions contained in the note are valid and clearly reflect the intent of the parties at the time of the execution of the note; and, finally,

(5) the parties did not intend, nor does the language of the decree with incorporated settlement and amendments provide that the $29.00 per week payment and the value of the apartment and the automobile supplied by the defendant shall be a credit against the $116,190.00 payment.

So far as the above stated conclusions of the District Court constitute findings of fact, they are binding on appeal, whether at the Superior Court level or before the Law Court, and, as Rule 73(a), D.C.Civ.R., provides, an appeal from a judgment of the District Court to the Superior Court shall be on questions of law only and any findings of fact of the District Court shall not be set aside unless clearly erroneous. A careful review of this record disproves any possible claim of clear error. Indeed, the defendant-husband's testimony concerning the intent of the parties in regard to either his claimed set-off or the contemplated interest rate on the note or any other factual matter fell short of proof of a mutual mistake; it amounted solely to a unilateral personal understanding and interpretation of the agreement and his personal expectations thereunder, which the District Court judge as the trier of fact did not have to accept as true.

Hence, the only issue before us is, whether the District Court committed reversible error in its conclusion of law that the language of the divorce decree with the incorporated settlement agreement and the amendment thereto is clear. The defendant-husband contends that it was error of law for the court, first, to conclude that the divorce decree as amended is clear, and, second, to disregard the defendant's extrinsic evidence in determining the meaning of the amended settlement agreement which formed part and parcel of the divorce decree. We disagree with the defendant's contention.

■ We said in *Astor v. Boulos Co., Inc.,* 451 A.2d 903, 905 (Me.1982) that

[t]he parol evidence rule operates to exclude from judicial consideration extrinsic evidence offered to alter or vary unambiguous contractual language. This proposition, however, presupposes the existence of an integrated contract. Once the existence of such a contract is ascertained, the degree of integration will control the scope of exclusion under the parol evidence rule. (footnotes omitted).

In determining whether an agreement is completely or just partially integrated, a court may resort to evidence of negotiations of the parties preceding the written contract, *Id.* at 905, or to the mutual understandings of the parties at the time of entering into the contract. *Connell v. Aetna Life & Casualty Company,* 436 A.2d 408, 412 (Me.1981). Although it could consider the extrinsic evidence received to aid it in determining whether the settlement agreement was an integrated contract and the scope of its integration, the District Court's implicit finding that the parties' settlement agreement was in fact a wholly integrated contract cannot be legally faulted. First, the agreement itself expressly stated in paragraph EIGHTEENTH that it was integrated and, secondly, the extrinsic evidence introduced to prove otherwise, was not probative of that issue and was properly disregarded by the court.

■ We conclude, as the District Court did, that the settlement agreement incorporated in and made a part of the divorce decree was clear and as such did not provide for a set-off of credits as claimed by the defendant-husband. This failure of the agreement to expressly address the issue of credit for the wife's interim monetary and other fringe benefits is not fatal to the court's finding that the agreement is clear. A contract need not negate every possible construction of its terms in order to be unambiguous. The instant agreement calls for the defendant-husband to pay to the plaintiff-wife in five years from the date of the note, without interest during those five years, the lump sum agreed upon in distribution of the marital property, *and* until the discharge of that obligation, to make cash weekly payments of $29.00 per week and to furnish her with an apartment and a car. In the absence of language indicative of credit or set-off, it is clear that none was intended. In fact, the agreement itself shows that the parties knew how to provide for credit against the note when that was the intent, since they did so in paragraph TENTH.

■ Having concluded that the settlement agreement is unambiguous and clear on its face, we point out that our conclusion further disposes of the defendant's contention that the agreement should be construed against his former wife, because her attorney drafted it and his own lack of counsel at the time placed him in a weaker bargaining position. The rule calling for construction of a contract against the party drafting it presupposes an initial ambiguous contract, for, absent any ambiguity in the terms of a contract, the question of their meaning is purely one of law. *See T–M Oil Co., Inc. v. Pasquale,* 388 A.2d 82, 85 (Me. 1978); *Lunt v. Fidelity & Casualty Co. of New York,* 139 Me. 218, 223–24, 28 A.2d 736, 739 (1942); *Bar Harbor & Union River Power Co. v. Foundation Co.,* 129 Me. 81, 85, 149 A. 801 (1930).

The entry will be:

Judgment affirmed.

All concurring.