Doyle HARRIMAN et al.

v.

Harlan M. MADDOCKS.

Supreme Judicial Court of Maine.

Argued Sept. 16, 1986.

Decided Dec. 2, 1986.

Ferris, Dearborn & Willey, Laurie Anne Miller, (orally), N. Laurence Willey, Jr., Brewer, for plaintiff.

Vafiades, Brountas & Kominsky, Charles E. Gilbert, III (orally), Bangor, for defendant.

Before McKUSICK, C.J., and NICHOLS, ROBERTS, WATHEN, GLASSMAN, SCOLNIK and CLIFFORD, JJ.

McKUSICK, Chief Justice.

In this action arising out of a motor vehicle collision, plaintiffs Doyle Harriman and his wife, Cindy Harriman, appeal the summary judgment entered by the Superior Court (Waldo County) in favor of defendant Harlan M. Maddocks. Finding, contrary to the Superior Court's conclusion, that the case involves one or more genuine issues of material fact, we vacate that summary judgment. Since the case must go back for further proceedings, we also now review the Superior Court's pretrial order that granted only in part the Harrimans' motion for discovery of the entire case file compiled by William Claffy, the claims adjuster for defendant's insurer, Allstate Insurance Company. We find no error in that order.

### Facts

While driving his car in Frankfort on November 30, 1984, Maddocks failed to yield at an intersection, causing a collision between his car and a dump truck driven by Harriman. Harriman's truck was seriously damaged, and Harriman himself suffered a hairline fracture of the clavicle, which has already required one operation and may require further surgery.

Immediately after the accident claims adjuster Claffy began negotiating a settlement with the Harrimans. Claffy and the Harrimans had a final settlement meeting on Friday, December 7, 1984. At that time Claffy gave the Harrimans a check for $7,500 and told them that they could keep the damaged truck. Appearing on the front of the check were the words: "Final settlement of any and all claims including bodily injury arising out of accident on 11/30/84 Frankfort Maine." At that same meeting the Harrimans signed a form labeled "Release of all Claims." That release, which recited the payment of $7,500 as its consideration, purported to absolve Maddocks and Allstate from any further liability for the Harrimans' "loss or damages of any kind" including "all unknown and unanticipated injuries and damages resulting from said accident." The Harrimans cashed the $7,500 check on the following Monday, December 10, 1984.

In depositions the Harrimans and Claffy have given conflicting testimony about the intended consequences of the exculpatory language of the release form and the settlement check. The Harrimans' deposition asserts that they signed the release form and cashed the check because Claffy as-

sured them that despite the exculpatory language of both the release and the check, they were releasing only further claims for damage to the truck and that the Harrimans would not be precluded from recovering future medical expenses. Disputing the Harrimans' version of the December 7, 1984, meeting, Claffy's testimony is that he clearly informed the Harrimans that the release covered all further claims arising from both property damage and personal injuries. Claffy's deposition also asserts that the $7,500 check was paid and accepted in settlement not only of the claim on the truck, but also for any medical expenses Harriman had incurred or might incur in the future.

The depositions also contain conflicting testimony concerning a handwritten inscription on the back of the release form that modified the total exculpation on the printed front of the form. That inscription, written and signed by Claffy and bearing the date of December 7, 1984, states that the release does not apply to Doyle Harriman's reasonable accident-related medical expenses up to $2,000 incurred within 180 days of the date of the release. The Harrimans' deposition states that the inscription was not present at the time they signed the release form but appeared only later, when Claffy mailed a copy of the signed release form to them. Contesting the Harrimans' version of events, Claffy's deposition claims that he added the notation on the back of the release in the presence of both Harrimans.

### I. *Summary Judgment*

Under M.R.Civ.P. 56(c), summary judgment is to be granted only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact...." The Superior Court ruled that the plain language of the release and the check barred the Harrimans from recovering on their present suit, and that the parol evidence rule rendered the contradictory testi-

mony in the depositions inadmissible at trial and therefore unavailable under M.R. Civ.P. 56(e)[1] to defeat defendant Maddocks' motion for summary judgment. In its bench ruling on the application of the parol evidence rule, the Superior Court overlooked two areas of factual dispute that must be resolved on the basis of the conflicting testimony of the Harrimans and Claffy *regardless of the parol evidence rule:* Whether the release was obtained by fraudulent misrepresentations and therefore invalid and whether the release was intended to integrate fully the parties' agreement. Additionally, we reject Maddocks' alternative argument that, even without the parol evidence rule, M.R.Evid. 408(a) bars the Harrimans from introducing testimony concerning their negotiation with Claffy.

### A. *Alleged Fraudulent Misrepresentation*

■ Any person may introduce parol evidence "to evidence the fact [of] a false and fraudulent representation made for the purpose of inducing [that person] to execute [a contract]." *Nelson v. Leo's Auto Sales, Inc.,* 158 Me. 368, 370, 185 A.2d 121, 122 (1962). "Fraud vitiates all contracts into which it enters...." *Dubie v. Branz,* 145 Me. 170, 173, 73 A.2d 217, 220 (1950). In their depositions the Harrimans testify that they were fraudulently induced to sign the release agreement and to cash the check; regardless of the parol evidence rule, their testimony is admissible on the issue of fact whether the release was vitiated by fraud. The Harrimans' action in cashing the $7,500 check was part and parcel of their action in signing the release on the preceding Friday and could well be found by the factfinder to have been induced by the same fraudulent misrepresentations. *Cf. Bryson v. Kenney,* 430 A.2d 1102 (Me.1981) (circumstances of delivery of check raised genuine issue of material

---

1. M.R.Civ.P. 56(e) provides in pertinent part: "Supporting and opposing affidavits ... shall set

forth such facts as would be admissible in evidence...."

fact whether check was intended as full accord and satisfaction).

■ Our decision in *LeClair v. Wells*, 395 A.2d 452 (Me.1978), is squarely on point and controlling here. In *LeClair*, on facts closely similar to those in the case at bar, we stated: "While it is true that a *valid* release will extinguish a cause of action ... the release will nevertheless be set aside if shown to be the product of fraud, misrepresentation, or overreaching." *Id.* at 453 (emphasis in original). Here, as in *LeClair*, "the specific factual assertions set forth in [the depositions], if believed by the trier of fact, are sufficient to justify setting aside the release on grounds either of misrepresentation or overreaching." *Id.* Because the Harrimans' depositions created "a 'genuine issue' regarding a 'material fact'—the validity of the release—within the meaning of Rule 56, the grant of summary judgment was improper." *Id.*

B. *Lack of an Integrated Agreement*

■ The fraud exception aside, the Harrimans' testimony will be admissible at trial under a second, equally well established exception to the parol evidence rule. "In determining whether an agreement is completely or just partially integrated, a court may resort to evidence of negotiations of the parties preceding the written contract ... or to the mutual understandings of the parties at the time of entering into the contract." *Waxler v. Waxler*, 458 A.2d 1219, 1224 (Me.1983). The Harrimans' testimony concerns the negotiations preceding the signing of the printed release form and goes directly to the question of whether the parties intended that form to be a complete integration of their agreement. In fact, the handwritten addendum on the back of the printed

release form provides evidentiary support for the Harrimans' position that the parties did not intend the printed release form to be a complete integration. On these facts, the Superior Court erred in granting summary judgment. "While it is true that the determination of whether an agreement is totally or partially integrated is a matter of law ... [d]isputes over the existence of a binding agreement or the substance of negotiations present classic issues for the factfinder." *All Hit Radio, Inc. v. Communications Broadcasting Affiliates, Inc.*, 101 F.R.D. 765, 766 (D.Me.1984) (citations omitted). *See also Zamore v. Whitten*, 395 A.2d 435, 440 (Me.1978).

We emphasize that our decision to vacate the Superior Court's grant of summary judgment is required by the particular circumstances of this case. Summary judgment, although a useful and salutary device in many cases, was inappropriate on the pleadings and depositions before the court.

C. *Evidence Rule 408(a)*

Defendant Maddocks also contends that the Harrimans' testimony in contradiction of the exculpatory consequence of the language of the release and the check is rendered inadmissible at trial by M.R.Evid. 408(a), the second sentence of which reads: "Evidence of conduct or statements made in compromise negotiations is also not admissible on any substantive issue in dispute between the parties."

The facial appeal of that argument disappears when one considers the legislative history of the rule. Commenting on Rule 408 as originally promulgated,[2] Field & Murray, *Maine Evidence* § 408.2, at 82 (1976), stated:

---

**2.** M.R.Evid. 408 as promulgated to be effective February 2, 1976, read as follows:

Evidence of (1) furnishing or offering or promising to furnish, or (2) accepting or offering or promising to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount, is not admissible to prove liability for, invalidity of, or amount of

the claim or any other claim. Evidence of conduct or statements made in compromise negotiations is likewise not admissible. This rule does not require exclusion when the evidence is offered for another purpose, such as proving bias or prejudice of a witness, negativing a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution.

The rule excludes compromise discussions only when used to prove liability for or invalidity of the claim or its amount. It has no application when used for another purpose.

It is true that the second sentence in Rule 408 was amended from its original form to its present form subsequent to the Field & Murray commentary.[3] The motivation for that language change, however, was limited as is revealed by the Advisory Committee's Note:

> By [this] amendment the applicability of Rule 408 to negotiations in domestic relations matters was made more clear by the amendment of Rule 408(a) to refer to "any substantive issue in dispute."

Me.Rptr., 479–487 A.2d LVIII (1985). As applied to a case, such as the present one brought by the Harrimans against Maddocks, where the only substantive issues are liability and damages, we do not believe the rulemakers in amending the second sentence had any intent to broaden the rule of exclusion beyond the subject matter identified in Rule 408's first sentence, namely, liability and damages. The construction that Maddocks would have us put on the second sentence would render the first sentence complete surplusage in all situations. In the absence of much clearer language in the rule, we are unwilling to hold that a person who allegedly was induced by fraudulent misrepresentations to sign a settlement agreement is barred from presenting "[e]vidence of conduct or statements made in compromise negotiations" to prove that fraud. *See Gorham v. Soble,* 120 Mich.App. 831, 841–42, 328 N.W.2d 119, 125 (1982). *Cf.* 23 C. Wright & K. Graham, *Federal Practice and Procedure* § 5314, at 282 (1980) (under Fed.R.Evid. 408 "wrongful acts are not shielded because they took place during compromise negotiations"). Our conclusion is unaffected by the fact that the 1985 amendments omitted the third sentence of the original Rule 408. *Compare* notes 2 and 3 above. We believe the third sentence was omitted either as the result of a conscious decision to leave out a redundant statement of the converse of the first two sentences[4] or as the result of a simple oversight in preparing the promulgation order.[5]

■ In sum, M.R.Evid. 408(a) does not prevent the Harrimans from presenting evidence that the signing of the release and the cashing of the check were vitiated by fraud and that those papers were never intended to be the complete and integrated statement of the agreement arrived at with defendant's insurer.

## II. *Discovery*

Prior to the hearing in the Superior Court on defendant Maddocks' motion for summary judgment, the Harrimans filed a motion for discovery of the entire case file compiled by the insurance adjuster Claffy. The motion justice properly conducted an *in camera* examination of that file and separated discoverable material from two other groups of material. The motion jus-

---

**3.** Effective January 31, 1985, the Supreme Judicial Court amended M.R.Evid. 408 to read as follows:

(a) Evidence of (1) furnishing or offering or promising to furnish, or (2) accepting or offering or promising to accept, a valuable consideration in compromise or attempting to compromise a claim which was disputed as to either validity or amount, is not admissible to prove liability for, invalidity of, or amount of the claim or any other claim. Evidence of conduct or statements made in compromise negotiations is also not admissible on any substantive issue in dispute between the parties.

(b) Evidence of conduct or statements by any party or mediator at a court-sponsored domestic relations session is not admissible for any purpose.

**4.** *See* 23 C. Wright & K. Graham, *Federal Practice and Procedure* § 5314, at 279 (1980) ("Any use of such evidence that is beyond the scope of the rule is permissible even if not mentioned; for this reason it has been suggested that the last sentence is superfluous").

**5.** The Advisory Committee's Note to the 1985 amendment refers only to the new language "any substantive issue in dispute," and makes no mention of the omission of the original third sentence. *See* Me.Rptr., 479–487 A.2d LVIII (1985).

tice culled from the file both irrelevant material, which is nondiscoverable under M.R.Civ.R. 26(b)(1),[6] and material "prepared in anticipation of litigation," which is nondiscoverable under M.R.Civ.P. 26(b)(3).[7] The Harrimans do not assert that the motion justice committed any specific error in performing that segregation of discoverable from nondiscoverable materials. Rather, the Harrimans assert on appeal that the motion justice should have permitted discovery of Claffy's entire file, assuming relevance, without requiring the Harrimans to make any showing that the materials in the file were not prepared in anticipation of litigation, or, if they were so prepared, that the Harrimans have a substantial need for the materials and are unable without undue hardship to obtain the substantial equivalent of the materials sought. M.R.Civ.P. 26(b)(3), see n. 7 above.

Our Maine Rule 26(b)(3) is identical in language to Fed.R.Civ.P. 26(b)(3).[8] The Harrimans urge us to apply our rule in the same manner as they claim a majority of federal courts [9] have applied Federal Rule 26(b)(3); namely, that we should indulge the factual assumption that the case file compiled by an insurance adjuster in the ordinary course of his business is not "prepared in anticipation of litigation" within the meaning of Rule 26(b)(3). In short, the Harrimans urge us to rule that an adjuster's file is routinely discoverable. Perhaps the seminal case adopting what the Harrimans call the majority approach is *Thomas Organ Co. v. Jadranska Slobodna Plovidba*, 54 F.R.D. 367, 372 (N.D.Ill.1972), which stated:

> *[A]ny* report or statement made by or to a party's agent (other than to an attorney acting in the role of counsellor), which has not been requested by nor prepared for an attorney nor which otherwise reflects the employment of an attorney's legal expertise must be conclu-

---

**6.** Delineating the scope of permissible discovery, M.R.Civ.P. 26(b)(1) provides:

> **(b) Scope of Discovery.** Unless otherwise limited by order of the court in accordance with these rules, the scope of discovery is as follows:
>
> (1) *In General.* Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party, including the existence, description, nature, custody, condition and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter. It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.

**7.** M.R.Civ.P. 26(b)(3) provides in pertinent part as follows:

> [A] party may obtain discovery of documents and tangible things otherwise discoverable under subdivision (b)(1) of this rule and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including his attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of his case and

> that he is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.

**8.** The federal rule, Fed.R.Civ.P. 26(b), was extensively amended in 1970. The advisory committee of the Maine civil rules recommended parallel amendments in the Maine rule, M.R. Civ.P. 26(b), pointing to "the inherent merit of the amendments to the federal discovery rules and the desirability of maintaining uniformity between the State and federal practice." Harvey, McGuire & Wroth, *Maine Civil Practice* 201–02 (2d ed. Supp.1981).

**9.** At least two courts, *Fireman's Fund Ins. Co. v. McAlpine*, 391 A.2d 84, 89 (R.I.1978), and *State Farm Fire and Casualty Co. v. Perrigan*, 102 F.R.D. 235, 237 (W.D.Va.1984), have termed this the "majority" approach, although both courts declined to adopt that approach. *But see Basinger v. Glacier Carriers, Inc.*, 107 F.R.D. 771, 773 (M.D.Pa.1985): "Federal courts are not in agreement as to whether an insurer's claim file, prepared after an accident that may generate a potential claim, can be protected from discovery under Rule 26(b)(3). It is unclear whether a majority position exists."

sively presumed to have been made in the ordinary course of business and thus not within the purview of the limited privilege of new Rule 26(b)(3). . . .

(Emphasis in original) The *Thomas Organ* court saw as an advantage of its approach that it avoided "a foreclosure of discovery of almost all internal documents of insurance companies relating to the claims of insureds." *Id.* at 373. *See also McDougall v. Dunn,* 468 F.2d 468, 473 (4th Cir. 1972); *Henry Enterprises, Inc. v. Smith,* 225 Kan. 615, 620–21, 592 P.2d 915, 919–20 (1979); *Atlanta Coca-Cola Bottling Co. v. Transamerica Insurance Co.,* 61 F.R.D. 115, 118 (N.D.Ga.1972); *Cotton States Mutual Insurance v. Turtle Reef Associates, Inc.,* 444 So.2d 595, 596 (Fla.Dist.Ct. App.1984).

A second group of courts has adopted the exactly contrary rule, holding that any "routine investigation of an accident by a liability insurer is conducted in anticipation of litigation. . . ." *Ashmead v. Harris,* 336 N.W.2d 197, 201 (Iowa 1983). *See also Fireman's Fund Insurance Co. v. McAlpine,* 391 A.2d 84, 89 (R.I.1978); *Almaguer v. Chicago, Rockland Island & Pacific Railroad,* 55 F.R.D. 147, 149 (D.Neb.1972).

Courts in a third group have rejected the categorical approaches of both the *Thomas Organ* and the *Ashmead* courts and have focused on the facts of the particular cases to determine whether the documents at issue were prepared in anticipation of litigation. *State Farm Fire and Casualty Co. v. Perrigan,* 102 F.R.D. 235, 238 (W.D.Va. 1984). *See also Spaulding v. Denton,* 68 F.R.D. 342, 345–46 (D.Del.1975). *See also* 8 C. Wright & A. Miller, *Federal Practice and Procedure* § 2024, at 198 (1970). *Cf. Hawkins v. District Court, etc.,* 638 P.2d 1372, 1378–79 (Colo.1982) (although approving *Thomas Organ* presumption, the court states a "general standard" that puts it into our third group).

■ We reject the "conclusive presumption" stated by the *Thomas Organ* court that "no document authored prior to the consultation of an attorney may be deemed to have been prepared in anticipation of litigation. . . ." *Thomas Organ Co.,* 54

F.R.D. at 372–73. We agree with Professor Moore's criticism of the *Thomas Organ* approach: "[T]here is no distinction between materials prepared by [an] attorney . . . and those that are prepared by a claim agent. . . . Therefore, the involvement of an attorney is not a prerequisite to the application of Rule 26(b)(3)." 4 J. Moore, *Moore's Federal Practice* § 26.64[2], at 358–60 (1984). By making the involvement of an attorney the determinative factor in applying Rule 26(b)(3), the *Thomas Organ* court seriously "misinterpret[ed] the purpose of the 1970 amendment [of the rule]." 4 J. Moore, *Moore's Federal Practice* § 26.64[2], at 360 n. 23.

■ We also reject the test used by the third group of courts: "Whether, in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation." *State Farm Fire & Casualty Co. v. Perrigan,* 102 F.R.D. at 238. That approach will often involve the motion justice in a complex and time-consuming procedure that will require extensive factfinding. In many cases it may prove difficult for the justice to determine precisely when the contingency of litigation has mounted into "a substantial probability that litigation will occur and that commencement of such litigation is imminent." *Home Insurance Co. v. Ballenger Corp.,* 74 F.R.D. 93, 101 (N.D.Ga.1977). The inevitable result would be further delay in the litigation process.

In light of the need for the efficient resolution of discovery motions, the detailed analysis called for by the third group of courts seems to us unworkable. More importantly, that analysis ignores the inescapable fact that the ordinary business of an insurance adjuster is not only "to determin[e] whether to pay its insured," *Westhemeco Ltd. v. New Hampshire Insurance Co.,* 82 F.R.D. 702, 708 (S.D.N.Y.1979), but also to prepare for litigation. As the court accurately stated in *Fireman's Fund In-*

*surance Co. v. McAlpine,* 391 A.2d at 89–90:

> In our litigious society, when an insured reports to his insurer that he has been involved in an incident involving another person, the insurer can reasonably anticipate that some action will be taken by the other party. The seeds of prospective litigation have been sown, and the prudent party, anticipating this fact, will begin to prepare his case.... Although a claim may be settled short of the instigation of legal action, there is an ever-present possibility of a claim's ending in litigation.

We agree that "a document prepared in the regular course of business may be prepared in anticipation of litigation when the party's business is to prepare for litigation." *Ashmead v. Harris,* 336 N.W.2d at 200. We therefore reject the argument that "the evaluation of claims of its policyholders is the regular, ordinary and principal business of ... insurance compan[ies] ... [and that] it can hardly be said that the evaluation of a routine claim from a policyholder is undertaken in anticipation of litigation...." Indeed, one of the routine functions of a claims adjuster in investigating an accident is to prepare for possible litigation. However, we do not agree that recognizing the litigation-oriented nature of the insurance adjuster's job necessarily compels "a foreclosure of discovery of almost all internal documents of insurance companies relating to the claims of insureds." *APL Corp. v. Aetna Casualty & Surety Co.,* 91 F.R.D. 10, 18 (D.Md.1980). Of course, the analysis we here adopt will almost always result in a preliminary finding that the claims file documents were prepared in anticipation of litigation. On the other hand, Rule 26(b)(3) specifically provides that the adjuster's case file is nevertheless discoverable "upon a showing that the party seeking discovery has substantial need of the materials in the preparation of his case and that he is unable without undue hardship to obtain the substantial equivalent of the materials by other means." See n. 7 above. We prefer to make the discovery of a claims adjuster's

file depend upon that particularized showing. We reject the *Thomas Organ* approach, "which twists the language of the rule so as to [avoid] bestow[ing] upon insurance companies an allegedly undeserved benefit." *Fontaine v. Sunflower Beef Carrier, Inc.,* 87 F.R.D. 89, 92 (E.D.Mo. 1980).

The application we make of Rule 26(b)(3) is consonant with both the language and spirit of the rule. Furthermore, our approach avoids imposing upon the motion justice the burdensome task of determining on a particular set of facts whether a document was prepared in the "routine" phase of the claims investigation or in the litigation phase of the investigation. Putting the motion justice to that task at all is unnecessary; the routine business of claims investigation by an insurance company is to prepare for possible litigation.

 The Harrimans have not made, or even tried to make, a showing of particularized need for the discovery of Claffy's case file. Therefore, on appeal, they cannot complain that the motion justice denied them access to part of that file.

The entry is: Summary judgment for defendant vacated; remanded for further proceedings consistent with the opinion herein.

Pretrial order granting in part and denying in part plaintiffs' motion for discovery of insurance adjuster's case file affirmed.

All concurring.