Thomas G. KARNOFSKY

v.

William C. ELLIOTT, Jr.

Supreme Judicial Court of Maine.

Argued Nov. 15, 1988.

Decided March 6, 1990.

Sandra Hylander Collier (orally), Silsby & Silsby, Ellsworth, for plaintiff.

Rufus E. Brown (orally), Drummond, Woodsum, Plimpton & MacMahon, Portland, for defendant.

Before ROBERTS, WATHEN, GLASSMAN, CLIFFORD, HORNBY and COLLINS, JJ.

ROBERTS, Justice.

William C. Elliott, Jr. appeals and Thomas G. Karnofsky cross-appeals from judgments of the Superior Court (Hancock County, *Chandler, J.*) in favor of Karnofsky in the net amount of $18,450.00. Both parties argue the court made erroneous factual findings and failed to apply appropriate principles of contract law. Because the court erred in some respects, we direct the entry of a modified judgment.

In 1976, Leslie Harlow and Karnofsky established a business in Bar Harbor known as the Town Farm Restaurant. Harlow and Karnofsky incorporated the business in 1979 with each owning 50% of the stock, while Karnofsky retained ownership of the real estate that the restaurant occupied. The business had accumulated a substantial indebtedness by 1983. Around this time, Harlow and Karnofsky met Elliott, a potential investor who lent the business $45,000.

In early 1984, while Karnofsky was in California, Harlow and Elliott obtained approval of an unsecured loan of $65,000 for the business and a $65,000 mortgage loan for Elliott to buy from Karnofsky the real estate supporting the business. Later, when the three parties met, Elliott proposed to pay Karnofsky $55,000 (partly through six annual "consulting fees"), to discharge his promissory notes, to indemnify him for all debts of the restaurant and to pay for the necessary legal work in return for Karnofsky's interest in the business and the real estate.

Karnofsky then returned to California where he received a letter from Elliott, dated March 1, 1984, purporting to "confirm our verbal agreement." Elliott stated that he would excuse the obligation on his $45,000 loan in return for the transfer of part interest in the Bar Harbor business from Karnofsky and Harlow and part interest in the Orono business from Harlow. Elliott further proposed to purchase Karnofsky's remaining interest in the business as well as the real estate, for the following consideration: Elliott would release Karnofsky from any business obligations and would make payments of $5,000 at closing, $10,000 on October 15, 1984 and $25,000 on October 15, 1985; the restaurant would employ him as a consultant for five years at $2,500 annually and would pay him 5% of the after-tax profits of the business.

The letter stated that the agreement was "of course, subject to final papering-up by the lawyers." Elliott, but not Harlow, had signed the letter. After some telephone discussion with Elliott, Karnofsky signed and returned the letter.

On May 2, 1984, Karnofsky conveyed the real estate to Elliott, who paid off various liens. During the spring of 1984 attempts were made to gather all the corporate records in one place and Elliott sought to have Karnofsky transfer to him Karnofsky's shares of stock. Although those shares were never located, Elliott made some payments to Karnofsky until early 1985. Elliott then advised Karnofsky that he would not complete the agreement, would not pay him the $25,000 due on October 1, 1985, and would not indemnify him on any liabilities or notes.

In July 1985 Karnofsky filed a complaint against Elliott seeking equitable relief and compensatory damages on grounds of breach of contract, promissory estoppel and fraud. Elliott counterclaimed for money lent to Karnofsky. Thereafter the bank commenced an action against Elliott and Karnofsky, resulting in cross-claims and a third-party action against Harlow. The actions were consolidated and pretrial proceedings eliminated all parties except Harlow (who did not defend at trial or on appeal), Elliott and Karnofsky.

The two cases were heard without a jury in a seven-day trial in 1987, during which more than 200 exhibits were introduced. Each party argued for the existence of a different enforceable agreement between them and alleged fraud on the part of the other. The court rejected the fraud claims, determined that neither party had established the existence of an integrated contract binding upon either party and proceeded to equitably distribute the obligations of the parties arising out of their failed agreement. The net result of the judgments entered required Elliott to pay Karnofsky $18,450. Elliott appealed and Karnofsky cross-appealed.

The court determined that the March 1, 1984 letter was not binding on the parties, first "because the agreement [did] not ac-curately set forth the [oral] agreements reached at the prior meeting," and second because it attempted to bind a third person not a party to the letter. The trial court, however, ignored the distinction between a binding integrated agreement and a binding *completely* integrated agreement. See *Astor v. Boulos Co., Inc.*, 451 A.2d 903, 905–906 (Me.1982); Restatement (Second) of Contracts § 214 comment a (1981). Consistent with the Restatement analysis, we conclude that the March 1, 1984 letter superseded the prior oral agreement to the extent they were inconsistent because the letter need not be a completely integrated agreement to be binding on Elliott and Karnofsky. Elliott and Karnofsky were mutually bound by the letter even though Harlow did not sign it; Elliott's willingness to rely on Harlow's oral agreement cannot, in these circumstances, affect the nature of Elliott's and Karnofsky's agreement. *See Rosenbloom v. Adams, Scott & Conway, Inc.*, 521 F.Supp. 372, 382 (S.D.N.Y.1981), *aff'd*, 688 F.2d 816 (2d Cir.1982).

The court correctly determined that the March 1, 1984 letter was not a complete expression of the parties' intentions because it stated, "These terms are, of course, subject to final papering-up by the lawyers...." Because neither party challenged the existence or validity of the March 1 letter and the agreement was not completely integrated, the court was correct in considering both the letter and extrinsic evidence to determine the parties' rights and obligations. *See Interstate Indus. Uniform Rental Service, Inc. v. F.R. LePage Bakery*, 413 A.2d 516, 519–520 (Me.1980). Those rights and obligations can be ascertained from the detailed findings of the trial court.

Karnofsky agreed to sell his interest in the corporation and the real estate. Elliott agreed to forgive the loans of $45,000 to the business, to indemnify Karnofsky on any business debts and to pay Karnofsky a total of $40,000. He further agreed that the restaurant would employ Karnofsky as a consultant for five years at $2,500 per year and pay Karnofsky 5% of after-tax profits. Although there is no dispute that

Karnofsky conveyed the real estate, Elliott contends that Karnofsky failed to properly assign to Elliott his shares, which could not be located. The record is clear, however, that Karnofsky relinquished control of the corporation, that Elliott was advised how the transfer could be effected without the missing shares and that Elliott agreed to have the necessary legal work completed to effectuate the agreement. Because the trial court properly rejected the claims of fraud on the part of both Karnofsky and Elliott, all that remains is a determination of the balance of the payments due from Elliott.

Elliott made two payments totalling $5,000 and another early payment of $9,000 that Karnofsky agreed to accept for $10,-000 credit. There remained unpaid $25,000 of the agreed $40,000 payment. Elliott paid only one of the five annual consulting fees, but that was to be a corporate obligation. Karnofsky received nothing representing 5% of after-tax profit, but Karnofsky did not establish the existence of any profit during the brief period Elliott continued the restaurant business. We conclude, on the basis of the trial court's findings, that judgment should be entered in favor of Karnofsky for $25,000.

The entry is:

Judgment vacated as to the plaintiff and the defendant.

Remanded with direction to enter judgment for the plaintiff on the counterclaim and for the plaintiff in the amount of $25,-000 on the complaint.

All concurring.