STATE OF MAINE                                    SUPERIOR COURT
WALDO, SS.                                        Docket No. CV 99-026

STATE OF MAINE
Waldo County Superior Court

AUG 17 2000

REC'D AND FILED
Joyce M. Page, Clerk

FCM-WAL-8/17/2000
DONALD L. GARBRECHT
LAW LIBRARY

AUG 21 2000

Robert Willis,                     )
          Plaintiff,               )
                                   )
                                   )
                                   )
          v.                       )      **FINDINGS OF FACT**
                                   )      **AND CONCLUSIONS OF LAW**
                                   )
                                   )      *TITLE TO REAL ESTATE INVOLVED*
                                   )
Herbert R. Spear,                  )
          Defendant.               )


This is an action seeking declaratory judgment respecting a piece of property at Lincolnville Beach in Waldo County. It involves a life interest[1] held by the Plaintiff in a portion of a house which Plaintiff had owned entirely until his sale to the Defendant in 1981.[2] The house and property were known as 'Back of the Moon'.

The house was large though the lot was small. The property is close to but not on West Penobscot Bay just north of Lincolnville Beach. The residence was in dire need of maintenance and repair in 1981 and has not improved greatly, if at all, in the intervening years. The portion of the house closest to Route 1, the westerly most portion of the buildings, is in the exclusive possession of Defendant and except as it houses certain switches for water, power and the like, is irrelevant to the matters at issue.

Each of the parties parks on the real estate and neither has difficulty

---

[1] Although denominated a "life estate" it is not a formal life estate as recognized by Maine law. See generally 51 Am Jur .2d "LIFE TENANTS AND REMAINDER MEN" §32, 33.

[2] The deed went of record on June 26, 1981. It was dated March 20, 1981 while the Agreement of Sale, which had an integration clause, was dated May 13, 1981. The estate was amended by instrument dated May 7, 1984 which is Plaintiff's Exhibit #3.

with those implied provisions of the agreement which relate to motor vehicle access and parking. What they do have a dispute about centers primarily on the meaning of the phrase " old garage". That issue is readily discernable by looking at Defendant's Exhibit #1.

Defendant's Exhibit #1 shows the house on the west where the Defendant lives. Contiguous easterly is the "deck" which formerly was a dinning room. Contiguous easterly of that is an odd shaped building which is the part of the estate in which Plaintiff has rights for life. On the first floor there is a kitchen, a bathroom, a den and a set of rooms shown as #4 and #5. The 'maid's room' is on the second floor.

Plaintiff claims that 4 and 5 are the 'old garage' and Defendant says that 4 is the "old garage" and that he, Defendant, owns 5. On this issue the Court finds for the Plaintiff.

The relevant facts may be summarized as follows. #4 and #5 create a "T" which was open in 1981. That is, where the vertical line meets the horizontal line there was open access; notwithstanding that, Defendant relies on the fact that the opening was framed in the manner in which a garage door would have been. The area remained open throughout the period since before the parties started to negotiate, while they were discussing the terms and conditions of sale and after the sale and up and until Plaintiff placed some shutters over the opening and moved a bed up against the wall created by the shutters. That was done sometime after-the mid 1980s. See Defendant's Exhibit #3 which shows the bed and wall.

From the time that Defendant went into occupancy of portions of the 'Back of the Moon', and in fact even before, Defendant stored things in #5. At or about the time of the agreement he began storing his boat in the garage. The evidence is clear, and the Court finds, that he was asked on any number of occasions to remove his boat and he agreed to even though he did not. It is important in the Court's conclusion that he did not resist those request on any claim of right until the mid 1990s.

His claim is that he was directed to remove the boat by letters which he ignored. The Court finds that there were confrontations and that Defendant never exercised his purported claim of right.

The Plaintiff's attorney, Mr. McKiittrick never heard of any new garage and neither did Plaintiff. In fact, Defendant never suggested that #5 was called the "new garage" he simply claimed that there were four rooms and that the "old garage" would have been one of them. The absence of the wall at the "T" intersection impairs whatever logic that position has.

It is clear that the phrase "old garage" created an ambiguity because the obvious implication is that a new garage had come into existence. Maine law has long held that the person drafting a contract has a duty to see that it is not ambiguous because ambiguities will work against the drafting party, here the Plaintiff. "The rule calling for construction of a contract against the party drafting it presupposes an initial ambiguous contract, for, absent any ambiguity in the terms of a contract, the question of their meaning is purely one of law." Dufresne, J. Waxler v. Waxler, 458 A.2d 1219, 1224 (Me. 1983).

There were a number of writings including Mr. McKittrick's first notes which make it clear that there was an ambiguity and there was a question of whether the agreement as it appeared in the deed was fully integrated. The parol evidence rule is therefore relevant.

As to the parol evidence rule and its impact, see Clarke v. DiPietro, 525 A.2d 623,625 (Me. 1987) and Harriman v. Maddocks, 518 A.2d 1027 (Me 1986) wherein the Law Court said: " [w]hile it is true that the determination of whether an agreement is totally or partially integrated is a matter of law . . . [d]isputes over the existence of a binding agreement or the substance of negotiations present classic issues for the factfinder." There is also the language of Handy Boat v. Professional Services, 711 A..2d 1306, 1309 (Me. 1998) "Application of the rule requires an initial finding that the parties intended the writing to integrate their understandings concerning the subject matter of the agreement. (Cit. om.) To determine whether integration was intended and whether the scope of integration was complete or partial, the court may consider extrinsic evidence." See Footnote #2 hereof and Defendant's Exhibit #9. Handy cites McCarthy v. U.S.I. Corp, 678 A.2d 48 (Me. 1996) for the proposition that "extrinsic evidence may only be admitted to show the parties' intent after contract language is first found to be ambiguous."

The Court's view of all of the evidence respecting the issue is that there was an ambiguity and the phrase "old garage" referred to the entire "T" shaped building the entrance of which is shown in Plaintiff's Exhibit #19 and partially in  Defendant's Exhibit # 2. The Plaintiff is declared the owner for life of all of the "T" shaped building.

Because the "old garage" has never been the property of the Defendant, he has never had any right to receive rent from it. Defendant's counter-claim for rent must therefore be and hereby is **DENIED**.

Another issue arising from the disputes of the parties evolves from ¶ (b) of the deed in evidence as Plaintiff's Exhibit #3. The Court finds that there has been no agreement between the parties and no compliance with the provision. The parties shall measure the premises on a square foot basis within 20 days from the date the Order becomes final. If the figures do not agree, they shall be averaged. If either or both parties disagree with that figure that party, or both parties, may hire a surveyor to provide the relevant calculation. On failure of either party to act, the other party may seek the appointment of a person to perform the act as provided for in Rule 70 MR.Civ P.

There is a controversy which arises from the phrase: ". . .  and for that period of time he actually occupies." It cannot be seriously suggested that the language was intended to allow Plaintiff to arrive on Friday, leave on Saturday return on Monday and have Defendant responsible for calculating part of the week or part of the days. It seems clear that the parties intended that the Plaintiff would notify the Defendant of his arrival and departure in advance and be bound accordingly. That may well still happen and would be allowed within the scope of the agreement.

In the absence of a specific writing identifying another period, the Plaintiff shall be deemed to be in residence during the entire months of June, July, August and September and shall pay for the proportional share fixed by the foregoing and Exhibit #3 for oil, electricity and garbage. Defendant shall forward copies of relevant bills for which copies he may charge Plaintiff his actual cost not to exceed $10.00 for any one year and Plaintiff shall pay said charges within 30 days.

Septic repair or replacement has become an issue because the cesspool on the site is an old well. It appears that it is increasingly incapable of servicing the Plaintiff's use. Things like washing machines cannot be used. Plaintiff seeks to have this Court determine that Plaintiff is not responsible for paying for repairs or replacement. It is clear that there is no express provision of the agreement (Plaintiff's Exhibit #3) which covers that cost. There is no reason why Defendant must provide a new system either. Each party's use must have the limitations of the system in mind. Either party could be responsible for damages caused by overburdening the existing system. But, given the circumstances, this Court has no basis for entering an order to enlarge, or to replace the existing system.

With respect to the barn[3] floor, there is insufficient evidence to allow this Court to make an order respecting repair. The scope of the problem was not made clear by the evidence nor was the proposed cost of repair suggested. It is impossible for this Court to asses the nature of the problem. It is possible for the Plaintiff to propose repairs and to achieve a remedy without seeking declaratory judgment as an anticipatory remedy. This is a complicated legal contrivance styled a life estate and has lasted for many years. It is impossible to resolve all of the problems with orders resulting from a suit for declaratory judgment.

Plaintiff is found to be entitled to rooms #5 and #6, Costs of services are as outlined, Plaintiff is not entitled to an order respecting rthe septic system, Defendant's counterclaim for a money judgment is denied. Judgment accordingly.

**The Clerk is directed to incorporate this Order into the docket by reference pursuant to M.R.Civ.P Rule 79 (a).**
Dated: August 17, 2000

_____
FRANCIS C. MARSANO
JUSTICE, SUPERIOR COURT

---

3. "Barn" appears to be a new word to describe the "old garage".

Date Filed June 21, 1999      Waldo      Docket No. CV-99-26

County

Action     Declaratory Judgment

DONALD L. GARBRECHT
LAW LIBRARY

AUG 21 2000

ROBERT WILLIS          vs.      HERBERT R. SPEAR

| Plaintiff's Attorney | Defendant's Attorney |
|---|---|
| Randal E. Watkinson, Esq.<br>P.O. Box 248<br>Rockland, Maine 04841-0248<br>594-8400 | ~~Pro-Se~~<br>~~PO Box 55~~<br>~~Lincolnville, ME 04849-0055~~<br>William Dawson, Esq.<br>132 Church St., PO Box 302<br>Belfast, ME 04915-0302<br>Tel: 338-9650 |

| Date of Entry | |
|---|---|
| 6/21/99 | Complaint dtd. June 10, 1999, filed.<br>Summary Sheet, filed.<br>Summons dtd. June 10, 1999 showing service on deft. on June 16, 1999, filed |
| 6/21/99 | Case file notice to atty. Watkinson. |
| 7/7/99 | Answer to Summons dtd.--, filed by Pro Se Deft. |
| 7/13/99 | Notification of Discovery Service by Plff. showing service of Notice to take Oral Deposition of Herbert R. Spear on deft. on July 12, 1999, filed. |
| 7/13/99 | Scheduling Order filed. Discovery Deadline is March 1, 2000. (Mills, J. |
| 7/13/99 | Notice of entry and copy Scheduling Order to atty. Watkinson and to pro se deft. |
| 7/23/99 | Notification of Discovery Service by Plff. showing service of Amended Notice to take Oral Deposition of Herbert R. Spear on deft. on July 22, 1999, filed. |
| 7/27/99 | Notification of Discovery Service by Plff. showing service of Second Amended Notice to take Oral Deposition of Herbert R. Spear on deft. on July 26, 1999, filed. |
| 8/9/99 | William L. Dawson, Jr., Esq., enters his appearance for Deft. by letter dtd. Aug. 9, 1999. |
| 8/9/99 | Objection to Deposition Notice dtd. Aug. 9, 1999, filed by Deft. |
| 8/12/99 | Notification of Discovery Service filed by Plff. showing service of of Third Amended Notice to Take Oral Deposition of Herbert R. Spear served on Atty. Dawson on 8/11/99. |
| 8/31/99 | Notification of Discovery Service by Deft. showing service of Notice to take Oral Deposition of Robert Willis on atty. Watkinson on Aug. 31, 1999, filed. |
| 03/17/00 | Report of Conference of Counsel, filed by Plff. |