**Lionel AUBIN, et al.,
Plaintiffs, Appellants,**

**v.**

**Stanley FUDALA, et al.,
Defendants, Appellees.**

**No. 85–1400.**

United States Court of Appeals,
First Circuit.

Argued Oct. 10, 1985.
Decided Jan. 28, 1986.

Joseph F. McDowell, III with whom Elizabeth Cazden was on brief, for plaintiffs, appellants.

William P. Tocchi with whom Michael B. O'Shaughnessy was on brief, for defendants, appellees Town of Bedford, et al.

Theodore Wadleigh with whom Robert A. Casassa and Wadleigh, Starr, Peters, Dunn & Chiesa were on brief for defendants, appellees Fudala, Morency, Biron and Audette.

Before BREYER and TORRUELLA, Circuit Judges, and HILL,* Senior District Judge.

BREYER, Circuit Judge.

Lionel Aubin won a $300,000 negligence verdict against the town of Bedford, New Hampshire, two of its policemen, and its chief of police. He and his parents obtained nominal damage awards on accompanying civil rights claims. Subsequently, Lionel asked the district court for about $80,000 in prejudgment interest. The plaintiffs also sought compensation "for all of their attorneys' fees involved in this matter," under 42 U.S.C. § 1988. The district court denied the request for prejudgment interest. It awarded $146.34 in attorneys' fees. The Aubins appeal these decisions. In our view, Lionel Aubin is entitled to prejudgment interest on his state law negligence claim. The district court should reconsider the request for fees.

## I

The suit underlying this appeal is a combined 'federal civil rights/state common law' action that Maurice and Normande Aubin and their sons Lionel and Norman brought against the town of Bedford, its police chief, four police officers, and a state trooper. The claims arose out of a burglary investigation on New Year's Eve, 1979. In the course of the investigation, one of the defendants, Officer Fudala, mistook Lionel Aubin for a suspect and shot him in the right shoulder. Defendant Trooper Meaney, mistaking Lionel's brother Norman for an accomplice, arrested and handcuffed him. Defendant Officers Biron and Morency then went to the door of the Aubin residence and prevailed upon a third Aubin son, Ronald, to let them search the house. The Aubin parents, Maurice and Normande, returned home later that night to learn that one of their sons was in the hospital and another at the police station.

The Aubins later filed this suit, which, after a jury trial, yielded the following results:

1. The jury awarded Lionel Aubin $300,000 on his state law negligence claim against Officers Fudala and Biron, the chief of police, and the town. It also awarded him $500 on his parallel federal civil rights claim against Fudala for 'unreasonable force.'

2. The jury found in favor of Lionel's parents, Maurice and Normande Aubin, on their federal civil rights claim complaining that their house had been unlawfully searched, but awarded only nominal damages of $1.

3. The jury found against Norman Aubin on his tort and civil rights claims stemming from his alleged false arrest and wrongful imprisonment.

4. The court directed a verdict against all plaintiffs on a civil rights claim alleging that the defendants had conspired to cover up their mistake in shooting Lionel.

On December 8, 1982, the court entered judgments embodying these results. Both sides appealed. We affirmed the judgments in all respects, in an opinion to which the reader may refer for a fuller account of the facts. *Aubin v. Fudala,* 782 F.2d 280 (1st Cir.1983).

Subsequently, when Lionel Aubin sought to collect his judgment, the defendants (or, rather, one of their insurance companies) refused to pay prejudgment interest on the $300,000 awarded Lionel under New Hampshire law. The plaintiffs then asked the district court to "add ... to the negligence verdict" an amount reflecting about $80,000 in prejudgment interest. They also asked the court to "issue an execution in favor of the plaintiffs" in that amount.

In addition, the plaintiffs sought attorneys' fees, *see* 42 U.S.C. § 1988, on the

---

* Of the Central District of California, sitting by designation.

ground that they had prevailed on two of their civil rights claims and that their remaining claims—in particular, Lionel's negligence claim—were, as a practical matter, inseparably bound up with the civil rights claims on which they prevailed.

The district court treated the request for prejudgment interest as "a motion to alter or amend judgment" under Fed.R.Civ.P. 59(e). It denied the request because it had not been made "10 days after the entry of the judgment." Fed.R.Civ.P. 59(e). And, as noted earlier, the court awarded the plaintiffs only $146.34 in attorneys' fees.

## II

■ We conclude that Lionel Aubin is entitled to prejudgment interest—despite the judgment's failure to mention it—for the following reasons. First, when a plaintiff secures a jury verdict based on state law, the law of that state governs the award of prejudgment interest. *See Hobart v. O'Brien,* 243 F.2d 735, 745 (1st Cir.) (diversity case), *cert. denied,* 355 U.S. 830, 78 S.Ct. 42, 2 L.Ed.2d 42 (1957); *Mallis v. Bankers Trust Co.,* 717 F.2d 683, 692 n. 13 (2d Cir.1983) (state law governs award of prejudgment interest on pendent state law claims even if federal claims provide basis for jurisdiction); *compare Furtado v. Bishop,* 604 F.2d 80, 97 (1st Cir.1979) (federal rule governs award of prejudgment interest on federal claims in § 1983 suit), *cert. denied,* 444 U.S. 1035, 100 S.Ct. 710, 62 L.Ed.2d 672 (1980). Second, the law of New Hampshire automatically entitles a successful tort plaintiff to prejudgment interest from the date suit is filed. The relevant statute says:

> In ... civil proceedings ... in which a verdict is rendered ... for pecuniary damages ..., there shall be added forthwith by the clerk of the court to the amount of damages interest thereon from the date of the writ or the filing of the petition to the date of such verdict. ...

N.H.Rev.Stat.Ann. § 524:1–b. Third, the amount of the state law negligence award was set forth separately in the judgment,

making the computation of the appropriate interest a simple, mechanical, nondiscretionary task for the clerk to perform. Finally, Lionel's delay in asking for the award is understandable in light of the standard practice in New Hampshire federal district court, *see infra,* and the delay does not appear to have prejudiced the defendants.

The award of prejudgment interest here at issue is thus quite different from an award of prejudgment interest under federal law, which is generally not automatic but is rather a matter for jury determination. *See, e.g., Segal v. Gilbert Color Systems, Inc.,* 746 F.2d 78, 81–84 (1st Cir.1984). It also differs from the state law prejudgment interest at issue in appellees' strongest authority, *Wojtkowski v. Cade,* 725 F.2d 127 (1st Cir.1984). In *Wojtkowski* the jury issued a general verdict providing for damages on both federal and pendent state claims. Since the general verdict in *Wojtkowski* did not segregate the damages into state and federal components, the clerk could not automatically calculate the interest due on the state portion. *See id.* at 129. The appellees here point to language in *Wojtkowski* that, in their view, leaves 'open' the entitlement question before us; the pertinent passage says that *"perhaps,* although we do not decide the point," state law interest on the state law claim would have been available had the jury rendered a special verdict. *Id.* (emphasis added). On the facts of this case, however, the issue is 'open and shut,' for neither the parties nor the members of this panel have been able to think of any serious legal or factual reason why Lionel Aubin would not have been entitled to prejudgment interest as of the time judgment was entered. That is to say, the entitlement was automatic, and the computation left for the clerk was simple, clear, and mechanical.

Our only uncertainty concerns the precise procedural device appropriate to secure Lionel the award. Ordinarily, we would instruct the court below to grant his motion to amend the judgment under Fed.

R.Civ.P. 60(a), which allows the district court, "at any time," to correct "clerical mistakes ... arising from oversight or omission." The scope of the rule is limited, *see Elias v. Ford Motor Co.,* 734 F.2d 463, 465–67 (1st Cir.1984); *Scola v. Boat Frances, R., Inc.,* 618 F.2d 147, 152–54 (1st Cir.1980); *Morgan Guaranty Trust Co. v. Third National Bank,* 545 F.2d 758, 759–60 (1st Cir.1976), but this case falls within that limited scope. *See Scola,* 618 F.2d at 153 (cases hold that "where the prevailing party has an unconditional statutory right to pre-judgment interest on the award, the failure to include the interest in the judgment is 'clerical mistake' that can be corrected under Rule 60(a)"); *see also Hayden v. Scott Aviation, Inc.,* 684 F.2d 270, 271–72 (3d Cir.1982) (citing *Glick v. White Motor Co.,* 458 F.2d 1287, 1293–94 (3d Cir.1972)); *Lee v. Joseph E. Seagram & Sons, Inc.,* 592 F.2d 39, 41–42 (2d Cir.1979) (applying Rule 60(a) to the portion of pre-judgment interest that "was to be computed ... and added to the judgment automatically by the court clerk"); *Flowers Transportation, Inc. v. M/V Peanut Hollinger,* 94 F.R.D. 99, 101 (E.D.La.1982); *In re Merry Queen Transfer Corp.,* 266 F.Supp. 605, 607 (E.D.N.Y.1967).

The parties have informed us, however, that the New Hampshire federal district court's standard practice in preparing the form of judgment is to mention only the amount of the damage award, and not to mention anything about costs or interest, even when there is no question about a party's entitlement to the latter items. The court clerk explicitly adds those items to the amount of damages only if execution should prove necessary, and in that event, the items are mentioned only in the writ of execution, not in the original form of judgment.

Whether the District of New Hampshire wishes to continue this practice seems to be a matter for it to decide. We note that the model form of judgment accompanying the Federal Rules of Civil Procedure does make reference to interest and costs, *see* Form 31, Appendix of Forms, Fed.R.Civ.P., but these forms are suggestive, not mandatory, *see* Introductory Statement, Appendix of Forms, Fed.R.Civ.P. (forms "intended for illustration only"). Depending upon whether the district court prefers to modify or to retain its present practice, it should either (1) correct the judgment under Rule 60(a), or (2) leave the judgment unaltered and simply issue a writ of execution reflecting the amount of interest due. In either case, the court should award Lionel Aubin the prejudgment interest he seeks.

### III

■ The appellants challenge the court's award of $146.34 in attorneys' fees as too low. The court apparently treated the appellants as "prevailing parties" on two of their federal civil rights claims, and agreed they were entitled to "a reasonable attorney's fee." 42 U.S.C. § 1988. But, after calculating the presumptively reasonable 'lodestar' amount—the hours the attorneys devoted to the litigation multiplied by their reasonable hourly rates—the court sharply reduced the lodestar to account for the limited "extent of [the plaintiffs'] success on [their] civil rights claims." In an attempt to quantify the "extent of success," the court discounted the lodestar by the ratio of the damages awarded on the civil rights claims to the total damages awarded. Since the jury awarded $501 damages on the civil rights claims and $300,000 on the negligence claim, the district court discounted the lodestar by more than 99 percent. We agree with the appellants that this method of calculation was improper.

First, the extent of a plaintiff's success in a civil rights suit is a practical question, involving a qualitative, as well as a quantitative, judgment. *See, e.g., Segal v. Gilbert Color Systems, Inc.,* 746 F.2d 78, 86 (1st Cir.1984) (rejecting percentage-of-recovery formula); *Furtado v. Bishop,* 635 F.2d 915, 917–20 (1st Cir.1980) (same). Where the plaintiff obtains a determination that the defendants violated the civil rights laws, the fact that the accompanying damage award is small or nominal does not automatically warrant a comparably mea-

ger fee. *See Perez v. University of Puerto Rico*, 600 F.2d 1, 2 (1st Cir.1979). There may have been value in the simple declaration of violations of federal law. The district court did not explicitly decide whether there was. And, we will not treat the matter as implicitly decided. The court's award appears to flow from the mechanical use of a novel, quantitative discounting rule. Such rules have typically met with judicial disapproval. *See, e.g., Hensley v. Eckerhart*, 461 U.S. 424, 435 n. 11, 103 S.Ct. 1933, 1940 n. 11, 76 L.Ed.2d 40 (1983). And, we believe the use of this rule particularly inappropriate for it would have anomalously meant a *larger* fee award had the plaintiff's victory on the negligence claim been *smaller*.

Second, the district court's approach is inconsistent with *Hensley v. Eckerhart, supra*. The Supreme Court there held that when a civil rights suit consists of multiple claims, and when the plaintiff prevails on some of them but not on others, the plaintiff is entitled to fees for hours worked not only on the successful civil rights claims, but also on other claims involving a "common core of facts" or "related legal theories." *Id.* at 435, 103 S.Ct. at 1940. Analogously, it seems to us, plaintiff should receive significant fees when he has won a *partial* victory on a civil rights claim while receiving substantially the relief he there sought, though the jury awards it on a factually or legally related pendent state claim.

For one thing, precedent so holds. The Second Circuit has stated that a "reasonable fee" should not be denied simply because "the jury awarded substantial damages only on the pendent state law ... claim and not on the constitutional violation." *Milwe v. Cavuoto*, 653 F.2d 80, 84 (2d Cir.1981); *see also Williams v. Thomas*, 692 F.2d 1032, 1036–39 (5th Cir.1982) (error to award only $2500 fee where jury found liability and no damages on federal claim and liability and $500 damages on pendent state claim), *cert. denied*, 462 U.S. 1133, 103 S.Ct. 3115, 77 L.Ed.2d 1369 (1983). We have held the same—at least implicitly—in *Cipriano v. Rhode Island*, 738 F.2d 535 (1st Cir.1984) (upholding fee award where amended verdict found liability but no damages on civil rights claim while finding liability and substantial damages on related pendent claim).

For another thing, this precedent makes sense in light of the fact that 'victory' in a civil rights suit is typically a practical, rather than a strictly legal matter. *See, e.g., Nadeau v. Helgemoe*, 581 F.2d 275, 279 (1st Cir.1978) ("[W]hen a plaintiff's lawsuit acts as a 'catalyst' in prompting defendants to take action to meet plaintiff's claims, attorney's fees are justified despite the lack of judicial involvement in the result."). Courts consequently have awarded fees "for the successful prosecution of pendent state law claims when the federal claims, though presenting substantial federal issues, never were reached by the district court." 10 C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure: Civil* § 2675, at 306 (2d ed. 1983) (citing cases); *see also Lund v. Affleck*, 587 F.2d 75, 77 (1st Cir.1978). If the Aubins, in fact, received the basic relief they sought (but on the state claim) and if, in fact, the state and federal claims are factually and legally interconnected, then their right to attorneys' fees is at least as strong as in these other cases. The jury findings of liability on two of their federal claims should work in their favor. *Cf. Russo v. New York*, 672 F.2d 1014, 1022 n. 5 (2d Cir.1982), *modified on other grounds*, 721 F.2d 410 (2d Cir.1983).

Of course, we write on the assumption that the appropriate interconnection exists; we also have assumed the likelihood that nonsubstantive reasons (such as the existence of a 'deep pocket' defendant or other reasons peripheral to the merits of the federal claim) account for the disparity between the damage awards on the parallel federal and state claims arising from Lionel's shooting. We know enough of the case from its prior appeal for such arguments to sound plausible. We believe, however, that the district court, more familiar with the details of the case than are we, should decide initially whether, or the extent to which, these assumptions are correct. While the court cannot fathom the mind of the jury, it can determine 'interrelationships,' the extent to which the plaintiffs got

basically what they wanted, and whether there was a substantial chance Lionel would have obtained (roughly) that same relief on his federal claim in the absence of the state claim. That is to say, in determining whether a 'discount' from the lodestar is appropriate, the district court should as an initial matter apply the principles set forth in *Hensley* and here to the facts of this case.

Finally, the appellees urge us to limit the fee award in light of the asserted failure of the appellants' attorneys to submit adequate time records to the district court. While we have insisted that such records be precise, *see Wojtkowski v. Cade*, 725 F.2d at 130; *Miles v. Sampson*, 675 F.2d 5, 8 (1st Cir.1982), we note that in this case the appellants did ask the district court for the opportunity to submit more detailed records in the event the court decided to award fees for work on some claims but not on others. Given this request, we believe the appellants should have the opportunity on remand either to explain why the existing records are adequate or to submit more detailed information.

*The order of the district court is vacated, and this case is remanded for proceedings consistent with this opinion.*