# United States Court of Appeals
## For the First Circuit

---

No. 00-1302

ACHILLE BAYART & CIE,

Plaintiff, Appellant,

v.

BYRON A. and RUTH CROWE,

Defendants, Appellees.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MAINE

[Hon. Gene Carter, U.S. District Judge]

---

Before

Torruella, Chief Judge,
Bownes, Senior Circuit Judge,
and Boudin, Circuit Judge.

---

Graydon G. Stevens, with whom U. Charles Remmel, II and Kelly, Remmel & Zimmerman were on brief, for appellants.

Robert J. Keach, with whom Michael A. Fagone and Bernstein, Shur, Sawyer & Nelson were on brief, for appellees.

---

January 26, 2001

**BOWNES, <u>Senior Circuit Judge</u>.** This is a fraudulent transfer action brought by the plaintiff-appellant, Achille Bayart & Cie ("Achille Bayart"), to recover the value of its debt plus double damages from the defendants-appellees, Byron and Ruth Crowe. The case was tried before a jury. At the conclusion of the plaintiff's case, the defendants moved for judgment as a matter of law pursuant to Fed. R. Civ. P. 50(a). Finding the plaintiff's evidence insufficient to permit a jury to conclude that there was value in the assets of the defendants' corporation which were over and above the amount of its secured debt, which was the plaintiff's theory of the case, the district court granted the defendants' motion. The plaintiff appeals. For the reasons stated below, we affirm the district court.

## I. BACKGROUND

Andrew Crowe & Sons, Inc. d/b/a Crowe Rope Company ("Crowe Rope") manufactured rope, twine, and related products. The defendant, Byron Crowe,[1] was the president and sole shareholder of Crowe Rope. The plaintiff, Achille Bayart, supplied raw materials to Crowe Rope and was owed $132,827.20.

Crowe Rope's manufacturing operations were conducted at plants located on real estate owned by or leased to Crowe Rope. Crowe Rope owned three pieces of real estate. Byron and Ruth Crowe

---

[1] His wife, Ruth Crowe, is also named as a defendant, but apparently she did not participate in the operation of Crowe Rope.

personally owned myriad parcels of real estate, four of which were leased to Crowe Rope; two others were undeveloped. Six other parcels of real estate were leased to Crowe Rope by Portco, Inc. and Floatation Products, Inc. Byron Crowe owned all of the outstanding stock of Portco and Floatation Products.

Crowe Rope was in severe financial difficulty. As of December 12, 1995, it was indebted in the amount of $8,491,493.82 to Fleet National Bank of Massachusetts ("Fleet Bank")[2] pursuant to three promissory notes executed by Crowe Rope and certain of its affiliates, including Portco and Floatation Products. In addition, Byron Crowe personally owed Fleet Bank $50,223.61 and Portco was indebted to Fleet Bank in the amount of $150,670.83. Crowe Rope was the guarantor of these debts and was obligated to pay Fleet Bank upon any default. In total, Crowe Rope, either directly or as guarantor, owed Fleet Bank $8,692,388.26. This debt was secured by mortgages on, and security interests in, all of the assets of Crowe Rope.

After Crowe Rope failed to meet its obligations to Fleet Bank, the bank demanded payment in full; Crowe Rope defaulted. Crowe Rope also defaulted on debts due to other creditors. The plaintiff Achille Bayart was among these other creditors.

---

[2]     The original loan transactions had been with Shawmut National Bank, N.A. ("Shawmut Bank"). Shortly before December 12, 1995, Shawmut Bank was acquired by and merged into Fleet Bank. By this acquisition and merger, Fleet Bank acquired the loans and security positions of Shawmut Bank.

In December of 1995, the defendants entered into an agreement with J.P. Bolduc ("Bolduc"). Bolduc had negotiated an agreement with Fleet Bank whereby Bolduc would acquire the debt owed by Crowe Rope to Fleet Bank. Through an entity known as JPB Maine Holdings, LLC ("Holdings"), Bolduc acquired all of the Fleet Bank debts by paying Fleet Bank approximately $8.4 million. In exchange for such payment, Fleet Bank transferred to Holdings loan documents evidencing obligations in the total amount of $8,692,388.26. The net result of this transaction was that Holdings became a secured creditor of Crowe Rope, Floatation Products, Portco, and the defendants.

On December 15, 1995, the defendants transferred their undeveloped property to the Bolduc-owned JPB Maine Capital Limited Liability Company ("Real Estate LLC"). Crowe Rope transferred all of its real estate and business assets including machinery, equipment, and inventory to another Bolduc entity known as Crowe Rope Industries Limited Liability Company ("Operating LLC"). Holdings then foreclosed on the real estate owned by both Real Estate LLC and Operating LLC and subsequently sold it to Real Estate LLC. In addition, Holdings foreclosed on the machinery and equipment owned by Operating LLC and sold it to Operating LLC. Holdings LLC retained the inventory owned by Operating LLC in satisfaction of debt.[3]

---

[3]     Intellectual property in the form of patents owned by Byron Crowe was included in the December 15, 1995 transactions. The buyer estimated that the patents had no value and attributed no value to it

Byron Crowe and Bolduc also entered into a non-competition and consulting agreement whereby Byron Crowe would receive $60,000.00 in exchange for his availability for consulting purposes as well as his agreement not to compete with Bolduc in the rope-making industry. The Crowes also received an annuity of $40,000.00 "for so long as either Byron Crowe or Ruth Crowe are living." The plaintiff's expert testified that the value of the annuity was $532,637.00.

The plaintiff brought suit pursuant to the Maine Uniform Fraudulent Transfer Act, Me. Rev. Stat. Ann. tit. 14, §§ 3751 et seq. (West Supp. 1999) ("Maine UFTA"), arguing that there remained equity in Crowe Rope over and above the amount paid by Bolduc to Fleet Bank in satisfaction of the secured debt. The plaintiff claimed that the Crowes were paid $600,000.00 while the unsecured creditors of Crowe Rope, the plaintiff included, received nothing.

The plaintiff brought suit against the Crowes personally to recover the value of its debt in the amount of $132,827.00 plus double damages. The case was tried before a jury. At the conclusion of the plaintiff's case, the defendants moved for judgment as a matter of law pursuant to Fed. R. Civ. P. 50(a). Finding the plaintiff's evidence insufficient to permit a jury to conclude that there was value in the assets of the defendants' corporation over and above the amount of its secured debt, the district court granted the defendants' motion.

in the transactions.

-6-

On appeal, the plaintiff argues that the district court erred when it granted the defendants' motion for judgment as a matter of law. It contends that "the evidence submitted was sufficient to establish that the value of Crowe Rope's assets exceeded its secured debt by more than the amount of Achille Bayart's claim." The plaintiff's claim hinges on "Plaintiff's Exhibit 23 and all reasonable inferences which can be drawn therefrom". The plaintiff also contends that the district court erred by excluding Plaintiff's Exhibit 6. We will address each of these contentions in turn.

## II.  DISCUSSION

We review judgments entered as a matter of law under Rule 50(a) <u>de novo</u>, viewing the evidence in the light most favorable to the nonmoving party. <u>Ed Peters Jewelry Co.</u> v. <u>C & J Jewelry Co.</u>, 124 F.3d 252, 261 (1st Cir. 1997); <u>see also</u> <u>Coyante</u> v. <u>Puerto Rico Ports Auth.</u>, 105 F.3d 17, 21 (1st Cir. 1997). "To warrant submission of an issue to the jury, the plaintiff must present more than a mere scintilla of evidence and may not rely on conjecture or speculation." <u>Katz</u> v. <u>City Metal Co.</u>, 87 F.3d 26, 28 (1st Cir. 1996) (internal quotation marks omitted). We review the exclusion of evidence for abuse of discretion. <u>Drohan</u> v. <u>Vaughn</u>, 176 F.3d 17, 23 (1st Cir. 1999).

## A.    Rule 50(a) and Exhibit 23

The plaintiff contends that the district court improperly dismissed its case under Fed. R. Civ. P. 50(a) because the plaintiff

had submitted sufficient evidence to permit a jury to conclude that there was value in the assets of Crowe Rope over and above the amount of its secured debt. Rule 50(a)(1) states:

> If during a trial by jury a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue, the court may determine the issue against that party and may grant a motion for judgment as a matter of law against that party with respect to a claim or defense that cannot under the controlling law be maintained or defeated without a favorable finding on that issue.

Fed. R. Civ. P. 50(a).

Under the provisions of the Maine UFTA, a transfer may be defined as fraudulent if the debtor made the transfer or incurred the obligation with actual intent to hinder, delay, or defraud any creditor of the debtor or without receiving a reasonably equivalent value in exchange for the transfer while the debtor was insolvent at the time. See Me. Rev. Stat. Ann. tit. 14, § 3575. A debtor is deemed insolvent if the sum of the debtor's debts is greater than all of the debtor's assets at a fair valuation or if the debtor is generally not paying its debts as they become due. See id. §§ 3573 (1), (2). To recover under the Maine UFTA, a plaintiff must prove that there was some determinable amount of value in the assets of the debtor over and above the amount of the secured debt. See Ed Peters, 124 F.3d at 262 (holding, under virtually identical provisions of the Rhode Island Uniform Fraudulent

Transfer Act, that the plaintiff must establish there was value in the debtor over and above the secured debt).  The district court, by granting the defendants' Rule 50(a) motion, determined that the plaintiff submitted insufficient evidence to meet its burden.

The plaintiff, on appeal, focuses on the district court's refusal to allow the jury to analyze the evidentiary significance of Exhibit 23 and the jury's lack of opportunity to draw reasonable inferences therefrom.  Exhibit 23, a proposal letter from Key Bank of Maine extending to Bolduc asset-based financing in the amount of $11,500,000.00, was submitted by the plaintiff as the predicate for determining the amount of money ultimately borrowed by Bolduc to finance the Crowe Rope acquisition.

The plaintiff's theory is as follows:

> By process of elimination, if one removes from the total assets of $11,500,000 all of the real estate value (which would include the $750,000 in new capital to pay down mortgages) and Bolduc's injection of $750,000 in working capital, the value of the remaining assets of Crowe Rope Industries - which consists of the machinery and equipment acquired from Crowe Rope - exceeds the Fleet debt by more than $600,000.[4]

---

[4]    The plaintiff provides the following summary of its analysis:

| | |
|---|---|
| 11,500,000 | Combined assets of Crowe Rope Industries and JPB Maine Capital |
| (1,415,950) | Transfer of tax values of real estate |
| 10,084,050 | VALUE OF CROWE ROPE INDUSTRIES |
| | |
| 10,084,050 | Value of Crowe Rope Industries |
| (8,692,493) | Crowe Rope debt to Fleet |

The plaintiff maintains that by not allowing the jury to engage in the analysis of Exhibit 23, a document admitted into evidence without objection, the district court erred in failing to assess the sufficiency of the contents of the document to support the inferences the plaintiff wished to draw therefrom. Furthermore, the plaintiff claims that the contents of Exhibit 23 were substantive evidence which the jury should have been allowed to consider in determining the facts and sufficiency of evidence to support a verdict.

After careful review of the entire record, we agree with the district court that Exhibit 23 is not a sufficient predicate to permit a jury to draw any rational conclusions as to whether or not the fair value of Crowe Rope's assets exceeded the amount owed to Fleet Bank under its various debt instruments, mortgages, and security agreements. Exhibit 23 was a preliminary, marked-up, unsigned draft proposal and was not the final document pursuant to which Bolduc completed his loan negotiations. The initial proposal was subject to contingencies of which there is no evidence in the record of satisfaction. For example, this draft proposal states, in pertinent part, that:

> [t]he loans are subject to Bank commissioned,
> Borrower funded appraisal of Machinery and
> Equipment as well as appraisals of all real
> estate . . . . The appraisals must indicate

---

( 750,000)   Equity Injection
  641,557    VALUE OF CROWE ROPE OVER FLEET DEBT

-10-

> collateral value deemed adequate by the Bank, and
> will be performed by Bank-approved appraisers.

Furthermore, there is no evidence in the record that Key Bank actually loaned Bolduc $11.5 million. Bolduc did not testify that he received $11.5 million from Key Bank and did not testify to the exact amount that he ultimately received from Key Bank. He merely testified that the proposal was eventually finalized, but that final document could not be located and Bolduc could not recall its terms. Therefore, a jury could only speculate as to the amount Bolduc actually received from Key Bank. A jury should not be asked to decide an issue that relies solely on conjecture and speculation. See Katz, 87 F.3d at 28 ("To warrant submission of an issue to the jury, the plaintiff must present more than a mere scintilla of evidence and may not rely on conjecture or speculation.").

The plaintiff had the burden of proving that there was some determinable amount of value in the assets of the debtor over and above the amount of the secured debt. Ed Peters, 124 F.3d at 262. Based on the entire record, specifically Exhibit 23, the plaintiff was unable to meet its burden without speculation and conjecture.

The plaintiff also argues that the money paid to the Crowes personally was evidence that there was equity in Crowe Rope over and above the secured debt. In essence, the plaintiff claims that it is unfair that the Crowes received approximately $600,000.00 while the

-11-

plaintiff and other creditors received nothing.  After careful review

of the entire record, however, we find that this argument does not

support the plaintiff's theory that there was equity in Crowe Rope over

and above the secured debt.  The payments to the Crowes can be

summarized in two parts: (1) Byron Crowe received from Bolduc

$60,000.00 pursuant to a consulting and non-competition agreement; and

(2) a $40,000.00 annuity to be paid to the Crowes "for so long as

either Byron Crowe or Ruth Crowe are living."  The value of the annuity

at the time was valued at $532,637.00.

These payments were made to the Crowes personally; not to

Crowe Rope.  Byron Crowe and Bolduc agreed that Byron Crowe would

receive $60,000.00 for his consultation services.  The testimony

revealed that Byron Crowe was an icon in the rope-making industry, with

thirty years of experience behind him.  For those same reasons, Bolduc

and Byron Crowe agreed that Byron Crowe would not compete with Bolduc

in the rope-making industry.  This $60,000.00 payment was to be made to

Byron Crowe individually; not to Crowe Rope.  Likewise, the $40,000.00

annuity was given in exchange for various pieces of property owned by

the Crowes personally; these parcels were not owned by Crowe Rope,

though some of the property may have been leased to Crowe Rope by the

Crowes.

After careful review of the entire record, we find that the

plaintiff failed to prove that there was equity in Crowe Rope over and

above the amount of its secured debt.  The district court was correct in granting the defendants' motion for judgment as a matter of law pursuant to Fed. R. Civ. P. 50(a).

**B.   Exclusion Of Exhibit 6**

The plaintiff next argues that the district court erred when it excluded Exhibit 6.  As noted above, we review the exclusion of evidence for abuse of discretion.  Drohan, 176 F.2d at 23.  "We afford wide latitude to trial courts in these purlieus." United States v. Winchenbach, 197 F.3d 548, 559 (1st Cir. 1999).  "Only rarely--and in extraordinarily compelling circumstances--will we, from the vista of a cold appellate record, reverse a district court's on-the-spot judgment."  Id.

Exhibit 6 is an "internal memorandum" written on August 21, 1995 by Byron Crowe's attorney, Gregory Tselikis, outlining the status of Crowe Rope.  The plaintiff tried to offer this document into evidence twice.  Both times, defense counsel objected to its introduction into evidence on relevance grounds, arguing that "[i]t could only be offered to establish some element of intent and Mr. Crowe testified he never read the memorandum."  Both times, the district court sustained the defendants' objection and excluded the exhibit.  On appeal, the plaintiff contends that this evidence was offered "as circumstantial evidence that the assets of Crowe Rope had value over and above the amount of secured debt."

-13-

Evidence is relevant only if it tends "to make the existence of a fact that is of consequence" more or less probable. Fed. R. Evid. 401. Nothing in the record indicates that this memorandum shows that there were assets over and above the secured debt. The plaintiff directs our attention to a single sentence in the memorandum concerning refinancing: "pull $400-600K out of refi [sic] to pay small dividend to trade." Based upon this single reference to a possible refinancing, however, a jury would not be able to calculate the existence of equity in the Crowe Rope assets. There are no specific references to the terms of the refinancing nor the collateral that would have to be offered for the purpose of carrying out this refinancing endeavor. We agree with the district court that this document was irrelevant to prove that there was equity in Crowe Rope over and above the secured debt.

This document is also insufficient to prove that the defendants intended to defraud their creditors. The two witnesses who testified about this document, the defendant Byron Crowe and Matthew Burns, a turn-around specialist hired by Crowe, stated that they may have received the document, but never read it. Therefore, the plaintiff's theory of intent is unsupported. We hold that the district

court did not abuse its discretion when it excluded Exhibit 6 as irrelevant.[5]

### III. CONCLUSION

For the foregoing reasons, we affirm the district court.

**Affirmed.**

---

[5] For the first time on appeal, the plaintiff claims that the "testimony provided sufficient foundation to admit the evidence under [Fed. R. Evid.] 801(d)(2)(D) as a statement by a party's agent concerning a matter within the scope of the agency, made during the existence of the relationship." Because we agree with the district court that this exhibit should be excluded on relevance grounds, Fed. R. Evid. 401, we need not address Rule 801(d)(2)(D). Moreover, we do not, except in rare circumstances, not applicable here, consider a claim not raised in the district court.